UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAGUNA COMMERCIAL CAPITAL, LLC, | |
| *plaintiff,* | Civil Action |
| versus | Section          Division |
| WISH HEALTH SERVICES, LLC, KEIMYEREIA LEWIS-JONES, LOUISI-ANA HEALTHCARE CONNEC-TIONS, INC., AETNA BETTER HEALTH, INC. D/B/A AETNA BET-TER HEALTH OF LOUISIANA, AMERIHEALTH CARITAS LOUISI-ANA, INC., COMMUNITY CARE HEALTH PLAN OF LOUISIANA, INC. D/B/A HEALTHY BLUE, AND UNIT-EDHEALTHCARE OF LOUISIANA, INC. D/B/A UNITEDHEALTHCARE COMMUNITY, | District Judge  Magistrate Judge |
| *defendants.* | |

**COMPLAINT FOR INJUNCTIVE RELIEF,
SPECIFIC PERFORMANCE, AND DAMAGES**

**Laguna Commercial Capital, LLC** (**"Laguna"**) supports its *Complaint for Injunctive Relief, Specific Performance, and Damages* ("*Complaint*") with these allegations of fact and law:

**NATURE OF THE COMPLAINT**

1.      This is Laguna's action against a healthcare provider (Wish) and its principal/guarantor (Lewis-Jones), who agreed to contract terms whereby Laguna would serve as a factor for Wish's healthcare receivables. The action sounds in <u>contract and related tort</u>, including unfair trade practices and fraud theories of liability.

2.      On the merits, Laguna seeks to enforce rights under its factoring agreement, eventually through an award of damages.

3.      But because Wish and Lewis-Jones have so exploited their Laguna factoring arrangement, by:

    a.      accepting $538,228.31 of Laguna's money; while

    b.      professing the healthcare receivables Wish provided in return were Medicaid-eligible and worth $672,784.79; while

    c.      providing mostly-Medicaid-ineligible receivables; and

    d.      for Medicaid-eligible and paid receivables, diverting the resulting payments (made by Medicaid payors into statutorily-required "lockboxes" controlled jointly by Laguna and Wish) out of Laguna's reach,

Laguna must now request contractually stipulated-to **injunctive relief in the form of an emergency order**:

    a.      directing all Medicaid-related programs and insurers (including the defendants in this matter), rather than through the usual "lockbox" method of payment, to pay proceeds from factored healthcare accounts directly to Laguna, a remedy of default to which Wish has contractually stipulated and a remedy expressly contemplated by 42 C.F.R. § 447.10(e);

    b.      directing all Medicaid-related programs and insurers, until a proper accounting can be obtained from Wish, to deal directly with Laguna, as successor in interest in the ownership of the claim proceeds; and

    c.      directing all Medicare- or Medicaid-related programs (including the defendants in this matter) to "reset" the start date of any applicable period for the submission, processing, determination, and/or appeal of such determinations regarding Medicare or Medicaid rights to be paid for Wish-provided or -submitted services.

4.      And although the contract sums due from the healthcare provider are secured by a UCC security interest in all the company's assets, Laguna requests the Court grant

**specific performance** to require the guarantor (Lewis-Jones) to execute a promised mortgage against an immovable to further secure the debts she and Wish owe Laguna.

## PARTIES

5. Laguna is a limited liability company organized in and under the laws of the State of Delaware. Laguna keeps its registered office in Orange County, California. Laguna consists of two members:

   a. William A. Greenwalt III, a natural person of the full age of majority, who is a citizen of the State of California, domiciled in Orange County; and

   b. Steven G. Hedin, also a natural person of the full age of majority, and a citizen of the State of California, domiciled in Orange County.

6. Defendant, **Wish Health Services, LLC ("Wish")**, is a limited liability company organized in and under the laws of the State of Louisiana. With a registered office in Orleans Parish, Wish has a single member:

   a. **Keimyereia Lewis-Jones a/k/a Keimyereia Railynn Lewis ("Lewis-Jones")**, a natural person of the full age of majority who is a citizen of the State of Louisiana, domiciled in Orleans Parish.

7. Lewis-Jones is also named as a party defendant in her individual capacity because she unconditionally guaranteed performance of Wish's obligations to Laguna and because she cannot shield herself from fraud liability with a limited liability company.

8. Defendant **Louisiana Healthcare Connections, Inc.,** a juridical person incorporated in the State of Louisiana with its principal place of business in the Parish of East Baton Rouge, State of Louisiana.

9. Defendant **Aetna Better Health, Inc. d/b/a Aetna Better Health of Louisiana**, a juridical person incorporated in the State of Louisiana with its principal place of business in the Parish of Jefferson, State of Louisiana.

10. Defendant **Amerihealth Caritas Louisiana, Inc.,** a juridical person incorporated in the State of Louisiana with its principal place of business in the County of Philadelphia, State of Pennsylvania.

11. Defendant **Community Care Health Plan of Louisiana, Inc. d/b/a Healthy Blue and Amerigroup Community Care f/k/a Amerigroup Louisiana, Inc.,** is a juridical person incorporated in the State of Louisiana with its principal place of business in the Parish of Jefferson, State of Louisiana.

12. Defendant **Unitedhealthcare of Louisiana, Inc. d/b/a Unitedhealthcare Community Plan**, a juridical person incorporated in the State of Louisiana with its principal place of business in the Parish of Jefferson, State of Louisiana.

13. The defendant-insurers named in ¶¶ 8-12, above, will be collectively called "Louisiana Medicaid Participants".

## SUBJECT MATTER JURISDICTION

14. **Complete diversity.** Under 28 U.S.C. § 1332, this Court may exercise original jurisdiction over the subject matter of Laguna's civil claims because:

   a. the parties are completely diverse where:

   -Laguna's citizenship, which is that of its two members, is in the State of California, and none of the defendants are citizens of the State of California; and where

   b. the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## VENUE

15.   This district is the appropriate forum under:

    a.    28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Laguna's claim(s) occurred in this district, and because a substantial part of property that is the subject of this action is situated in this judicial district; and

    b.    28 U.S.C. § 1391(b)(3), because Wish operated within this district as its principal business pursuit and the Court may therefore exercise personal jurisdiction over it regarding Laguna's civil claims; and

    c.    because both Wish and Lewis-Jones contractually stipulated to the exercise of personal jurisdiction by, and agreed to submit to venue in, the court of Laguna's choosing.

## FACTORING

16.   Laguna does business in the factoring industry by purchasing accounts receivable of various business entities ("factoring clients").

17.   The accounts (also referred to as "receivables") Laguna purchases are memorialized by invoices to third parties who are customers of Laguna's factoring clients.

18.   Within the factoring industry, the entity purchasing receivables is the "factor" or "purchaser" of the receivables. Here, that's Laguna.

19.   The factoring client from whom the factor/purchaser (here, Laguna) purchases the receivables is also known as the "seller." Here, the factoring client/seller of its receivables is defendant Wish.

20.   The customer for whom the factoring client/seller has performed services or sold goods, and to whom an invoice is issued for payment, is commonly known both in the factoring industry and under § 9-102(3) of the Uniform Commercial Code as the "account debtor."

21. Here, the account debtors were healthcare recipients (patients) or government program insurers/payors like Medicare or Medicaid, here the Louisiana Medicaid Participants named as defendants in ¶¶ 8-12.

22. The mechanics of factoring agreements vary wildly from agreement to agreement, some are non-recourse "true sales" of accounts. And others are "factoring" in name only, where loans or lines of credit are merely secured by full-recourse security interests in accounts.

23. Generally, "true sales" will feature substantial transfers of risk to the factor with recourse only for meaningful factoring client/seller breaches – mere inability of the account debtor to pay is a risk borne by factors like Laguna in most "true sales."

24. Advances on the purchased receivables usually far predate their collection, which is an uncertain event.

### FACTORING OF HEALTHCARE RECEIVABLES

25. Laguna's factoring efforts focus on the purchase of healthcare providers' receivables.

26. Because of the complexities of the business and the regulatory environment, only a few companies factor healthcare receivables today, largely because of logistical difficulties presented by federal anti-assignment statutes regarding the assignments of receivables implicating Medicare and Medicaid programs.

27. But as Congress has clarified, so long as Medicare or Medicaid payments are made directly to the healthcare provider, which is usually accomplished by the creation of designated "lockbox" accounts for receipt of these payments, there is no prohibition against the *assignment* or *sale* of the receivables.

28. In practice, the mechanics of a properly-confected Medicare/Medicaid receivables factoring arrangement are simple:

    a.     two lockbox accounts are maintained: a "governmental lockbox" and a "commercial lockbox";

    b.     while non-Medicare or Medicaid payors/account debtors are instructed to pay directly into the commercial lockbox, healthcare providers like Wish agree to instruct Medicare or Medicaid payors (state/federal plan insurers like the Louisiana Medicaid Participants named as defendants here) to pay directly into a "governmental lockbox";

    c.     factoring clients like Wish contractually agree to instruct the lockbox bank, after payments are made into the governmental lockbox, to sweep those funds into the commercial lockbox daily; and

    d.     per the factoring agreement, the factor (Laguna) periodically "sweeps" the payments on the accounts it has purchased from the lockbox.

    e.     Factoring clients like Wish promise, under penalty of default, that they will not alter the payment instructions outlined above and they agree that they will not divert funds intended for the factor.

## WISH; LEWIS-JONES

29. In 2017, Lewis-Jones represented to Laguna that Wish provided outpatient family medicine, internal medicine, community/behavioral health, and in-home supportive care services in and around New Orleans.

30. In 2017, Lewis-Jones represented to Laguna that Wish regularly billed Medicare and/or Medicaid for the healthcare services it performed for its patients.

31. Upon information and belief and the records of the Louisiana Secretary of State, Lewis-Jones was the only individual who exercised authority over Wish's management decisions.

## LAGUNA AND WISH;
## AUGUST 2017 CONTRACT

32. The factoring relationship between Laguna and Wish was created by an *Accounts Receivable Purchase & Security Agreement* ("*Wish Factoring Agreement*") dated August 31, 2017, by and between Laguna and Wish, which agreement included:

   a. Wish's promise to sell Laguna its "Eligible Healthcare Receivables" as they existed and in the future;

   b. Wish's grant of a UCC security interest in all its assets with a promise not to further encumber the assets;

   c. Lewis-Jones's personal guarantee of performance of all Wish's obligations under the *Wish Factoring Agreement* ("*Lewis-Jones Guarantee*"); and

   d. a right to "receive a Louisiana collateral mortgage from [Lewis-Jones] on the property located at: 2801 Wabash, New Orleans, LA 70114, additionally securing all Obligations due and owing under [the *Wish Factoring Agreement*]…" ("*Wabash Mortgage Promise*").

33. In its characterization as a sale or a multiple-indebtedness loan secured by Wish's receivables, the *Wish Factoring Agreement* is a "true sale" for Louisiana and California law, and it made use of a "Governmental Lockbox Account" where Medicare or Medicaid programs were implicated.

### FAILURE TO COLLATERALIZE 2801 WABASH

34. To date, Lewis-Jones has not executed the documents to secure Wish's obligations with the property at 2801 Wabash.

35. Although Wish gave Laguna a *Limited Power of Attorney* to "do all other acts and things necessary to carry out the terms of the [*Wish Factoring Agreement*]", it is less clear on whether that *Limited Power of Attorney* permits Laguna to execute the

documents <u>on Lewis-Jones's individual behalf</u> to create her collateral mortgage (or
Louisiana Civil Code Article 3295/3298 mortgages) encumbering 2801 Wabash.

### Laguna PERFORMANCE AS WISH'S FACTOR

36.     Between the execution of the *Wish Factoring Agreement* and December 18, 2018,
when Lewis-Jones informed Laguna of Wish's insolvency, Laguna purchased receiv-
ables from Wish which Wish and Lewis-Jones represented were worth more than
$672,784.79.

37.     During that time, Laguna made $538,228.31 in advances to Wish.

38.     To date, and despite considerable effort, Laguna has collected only $345,309.19 on
the Wish receivables it purchased.

### WISH DEFAULTS

39.     In late Fall 2018, Laguna learned that Wish and Lewis-Jones had:

   a.     altered the lockbox structure or changed its payment instructions to account
debtors so Laguna no longer had access to the payments on the accounts it
had factored;

   b.     interrupted or altered the interface agreed upon in the *Wish Factoring Agree-
ment* whereby Laguna could have a continuous connection with the Wish
patient accounting system and the patient accounting system of any third-
party billing company;

   c.     submitted for sale to Laguna the proceeds of claims submitted to Louisiana
Medicaid and other payors, when it knew or should have known the claims
were not eligible receivables under the *Wish Factoring Agreement* based on
certain Wish (Medicare/Medicaid) licensing problems;

   d.     submitted for sale to Laguna accounts which it materially misrepresented as
eligible receivables; and/or failed to disclose to Laguna that previous repre-
sentations about the receivables it sold as eligible had become untrue in some
material respect;

e. not conducted its billing in a timely or accurate manner, free from errors, under Medicare, Medicaid, and related laws, professional standards, and contracts between Wish and payors, including payor's stated rules, procedures, or incorporated or otherwise understood standards;

f. failed to perform Wish's repurchase obligation(s) and other *Wish Factoring Agreement* obligations, even after amicable demand;

g. became insolvent and failed to timely inform Laguna of Wish's insolvency; and

h. acknowledged in writing to Laguna it has discontinued its business as a going concern.

40. Based in part on its ¶ 39 discoveries, Laguna deemed itself insecure regarding the prospect of Wish's performance of its present or future obligations, and of its already-unperformed past obligations.

## DECEMBER 2018 DEFAULT NOTICE
## AND DEMAND ON LEWIS-JONES

41. Having deemed itself insecure, on December 17, 2018, Laguna emailed and U.S. Mailed Wish and Lewis-Jones a *Notice of Default and Demand on Guarantor*, in which Laguna requested that Wish and Lewis-Jones:

a. provide satisfactory proof of Wish's re-establishment as an active, on-going business;

b. satisfy or present Laguna with an acceptable plan for satisfaction of their joint-and-several repurchase obligation, which was then valued at $121,470.40, a sum which represented advance amounts plus discount Fees under the *Wish Factoring Agreement*; and

c. satisfy their solidary obligation to reimburse Laguna for all expenses associated in collection of Wish's obligations, then valued at $20,000.

42. The following day, in consecutive December 18, 2018 writings to Laguna principal Bill Greenwalt, Lewis-Jones replied by email:

> You know and I know that's not correct amount. You added numbers in the last 2 factoring that was not supposed to be

> there. I don't have a problem repaying you guys but you're not
> about to bullshit me. I'll file bankruptcy first! I said I would
> send payments and that's what it is. Wish is gone and I will not
> be re establishing services at all. All contracts are terminated.
>
> And I don't live on Wabash. That house was sold and the busi-
> ness is no longer on Lasalle it's closed.

43.   Wish and Lewis-Jones have not "[sent] payments" – not even one. Rather, they con-

tinue their various breaches under the *Wish Factoring Agreement* and, as the days

pass, the likelihood of payment on the Medicaid receivable rights Laguna purchased

becomes bleaker.

## COUNT ONE:
## INJUNCTIVE RELIEF

44.   Laguna incorporates by reference the allegations it already made in ¶¶ 4, above.

45.   In the *Wish Factoring Agreement*, Wish and Lewis-Jones specifically consented:

a.   at ¶ 8.5, to injunction "without having to establish a lack of an adequate
     remedy at law or other grounds other than showing that the Purchased
     Healthcare Accounts or the Collateral is subject to being dissipated or is oth-
     erwise not being made available to [Laguna] as required under this [*Wish
     Factoring* Agreement]";

b.   at ¶ 8.5, to waiver of necessity of injunction bond;

c.   at ¶ 8.5, to the satisfaction of any non-waivable statutory or common law
     bond requirement by Laguna's posting of a bond in any amount not to exceed
     $10,000; and

d.   at ¶ 8.6, to a "court order directing that payments be made to [Laguna], that
     such direction shall apply to and provide that all Medicare (or other Govern-
     ment Programs) benefits owing to [Wish] shall be paid [by the defendant Lou-
     isiana Medicaid Participants] to [Laguna] for an indefinite period of time or,
     at [Laguna]'s option, until such time as all outstanding Obligations owing to
     [Laguna] are paid to [Laguna]," which court order is expressly contemplated
     under federal law by 42 C.F.R. § 447.10(e) and 42 U.S.C. § 1395g(c)(1).

46.   Contractual stipulations aside, injunction is appropriate where:

a.   Wish and Lewis-Jones' actions have left Laguna cut off from the proceeds of the accounts it has factored and advanced hundreds of thousands of dollars to Wish and Lewis Jones.

b.   Laguna's existence is threatened by Wish and Lewis Jones' breaches; money damages later will not alleviate the potential harm Laguna faces.

c.   The relief sought, an order that the defendant Louisiana Medicaid Participants deal with Laguna directly and "pay all Medicaid benefits owing to [Wish] to Laguna for an indefinite period of time or, at Laguna's option, until such time as all outstanding Obligations owing to Laguna are paid to Laguna," which court order is expressly contemplated by federal law by 42 C.F.R. § 447.10(e) and 42 U.S.C. § 1395g(c)(1), will not harm the defendant Louisiana Medicaid Participants at all, let alone excessively.

d.   Given the potential application of Louisiana contract law to this dispute, Laguna is likely to succeed on the merits. Not only are Wish and Lewis-Jones' failures to perform ground in potentially-criminal and civil fraud-based conduct, but Wish and Lewis-Jones cannot unilaterally dissolve the *Wish Factoring Agreement,* where Laguna has substantially (if not fully) performed and where Wish cannot show how the any impairment of its interest in preserving the agreement. La. Civ. Code art. 2014.

47.   The Court should issue, and Laguna will separately apply for:

a.   a temporary restraining order affirmatively requiring the Louisiana Medicaid Participants to: (i) disclose to Laguna the existence of any third party billing company (which Wish had to disclose to Laguna) they know Wish is using;

(ii) immediately pay Laguna directly for any accounts Wish or Lewis-Jones submit for payment; and (iii) communicate directly with Laguna as Wish's successor-in-interest, resetting any lapsed deadlines for the submission of Medicaid accounts or for the appeal of Wish-unfavorable Medicaid eligibility determinations; and

b.   a preliminary injunction affirmatively requiring the defendant Louisiana Medicaid Participants to continue the performance(s) outlined in ¶ 47.a, above, until the parties can present their respective cases on the merits or until such performance extinguishes Wish and Lewis-Jones' obligations to Laguna.

## COUNT TWO:
## BREACH OF *WISH FACTORING AGREEMENT*

48.   Laguna incorporates by reference the allegations it already made in ¶¶ 1-47, above.

49.   Wish breached the *Wish Factoring Agreement* in the non-exclusive particulars enumerated in ¶ 39, above.

50.   Those breaches alone permitted Laguna to terminate the *Wish Factoring Agreement*, accelerate all obligations, and seek damages, without need for notice to Wish or Lewis-Jones.

51.   But Laguna also offered Wish and its guarantor, Lewis-Jones, a cure period – which she rejected and indicated by December 18, 2018 email "[a]ll contracts are terminated."

52.   Under the *Wish Factoring Agreement*, Laguna is entitled to judgment against Wish and Lewis-Jones, *in solido*, for:

a.   $466,779.59, which represents the Repurchase Obligation (Advance Amounts plus Discount Fees);

b.    late Charges (.110% *per diem*) on all outstanding Obligations;

c.    contractual Default Charges ($500 per week) for each Event of Default;

d.    contractual Early Termination Fees (Discount Fee charged for full utilization of the Accounts Receivable Purchase Facility) in the amount of $58,860;

e.    contractual Early Termination Fee (4% of the Facility Amount); and

f.    all Laguna's initial and ongoing expenses associated with the documentation and administration of the *Wish Factoring Agreement*, including without limitation: due diligence, audit expenses, legal fees, mortgage/title insurance, recording fees, bank and lockbox account fees, bank transfer fees, continuing search and filing fees.

## COUNTS THREE, FOUR, AND FIVE:
## CONVERSION, FRAUD, AND UNFAIR
## AND DECEPTIVE TRADE PRACTICES
## LA. CIV. CODE ARTS. 2315, 1953, ET SEQ
## LA. REV. STAT. § 51:1401, ET SEQ.

53.    Laguna incorporates by reference the allegations it already made in ¶¶ 1-52, above.

54.    Louisiana's Unfair and Deceptive Trade Practices Law (commonly called "LUTPA") does not countenance every contractual dispute; rather, it prohibits meaningful and morally wrong practices which are themselves unfair and deceptive. LA. REV. STAT. § 51:1405, *et seq*.

55.    Wish's and Lewis-Jones's practices fit squarely within the "unfair" and "deceptive" category required to impose LUTPA's enhanced remedies:

a.    representing to Laguna that the healthcare receivables it offered Laguna for purchase and factoring would be paid by governmental programs like Medicare and Medicaid;

b.    accepting substantial amounts of money in a short time period, in return for the worthless healthcare receivables, which it knew or should have known Laguna wouldn't be able to collect;

c.  failing to diligently rectify noncollection issues with Medicare and Medicaid officials when it knew Laguna wouldn't be able to do so based on the federal lockbox requirements involved in factoring Medicare and Medicaid receivables;

d.  failing to immediately notify Laguna of its Medicare and Medicaid receivables issues in such time that Laguna could have decided whether to continue to purchase Wish's receivables; and

e.  exploiting the lockbox regulations regarding Medicare/Medicaid receivables factoring by unilaterally and with no prior notice to Laguna diverting the agreed course of lockbox payments, and cutting Laguna off from access to:

  i.  the proceeds to the healthcare accounts it purchased (which funds Wish/Lewis-Jones have wrongfully converted for their own benefit(s)); and

  ii.  the billing and collection software Wish agreed it would give Laguna access, so Laguna could monitor account submission and collection activity.

56.  Wish and Lewis-Jones were something different than distressed business and principal; the continued taking of advance amounts despite their superior knowledge of the worthless nature of the Medicare and Medicaid receivables demonstrates their intent to keep Laguna in the dark about the status of the receivables Wish was selling Laguna.

57.  Wish and Lewis-Jones's quick entry into and exit from the Medicare and Medicaid receivables factoring world permits the inference they never intended to make Laguna whole, or even close to it.

58.  Wish and Lewis-Jones should be adjudged frauds based on their misrepresentations and suppressions of the truth, including their silence and inaction in the face of a duty to disclose, all made intending to obtain an unjust advantage over their factor Laguna.

59.  Besides the unpaid sums owed under the *Wish Factoring Agreement*, Laguna may recover mandatory statutory attorney's fees and costs under LA. REV. STAT. § 51:1409.A.

60.  And once Wish and Lewis-Jones are put on notice as prescribed by LA. REV. STAT. § 51:1409.A, if their conduct does not cease, the Court should enhance Laguna's damages (up to treble) under LUTPA § 1409.A.

**COUNT SIX:**
**SPECIFIC PERFORMANCE**
**LA. CIV. CODE ART. 1986**

61.  Laguna incorporates by reference the allegations it already made in ¶¶ 1-60, above.

62.  Laguna has the right to secure the obligations owed by Wish and Lewis-Jones as described in the *Wish Factoring Agreement*, the exercise of which may require further action(s) by Wish and/or Lewis-Jones.

63.  More specifically, Lewis-Jones should be ordered to execute the documents to collateralize her property at 2801 Wabash in New Orleans, Louisiana, as provided for by the *Wish Factoring Agreement*.

64.  Wish and Lewis-Jones consented to specific performance if a default occurs in ¶ 8.5 of the *Wish Factoring Agreement*.

65.  In the alternative, the Court should construe the *Limited Power of Attorney* to include Laguna's ability to execute the appropriate 2801 Wabash mortgage documents in favor of Laguna if Lewis-Jones makes no appearance.

## COUNT SEVEN:
## REVOCATORY ACTION
## LA. CIV. CODE ARTS. 2036, ET SEQ.

66.     Laguna incorporates by reference the allegations it already made in ¶¶ 1-65, above.

67.     Laguna is undeniably Wish and Lewis-Jones's obligee; that is, Wish and Lewis-Jones, as obligors, owe a debt to Laguna.

68.     Upon information and belief, Wish and/or Lewis-Jones have transferred assets to third parties, at least some of which are secured (or which Wish/Lewis-Jones promised to collateralize) by consented-to Wish/Lewis-Jones security interests described in ¶ 32 above.

69.     For instance, Lewis-Jones specifically maintains that 2801 Wabash, a property she agreed to mortgage to secure Wish's and her obligations under the *Wish Factoring Agreement* and *Guarantee*, has been sold to a third party.

70.     Any such transfer was made after Laguna acquired the right to be paid under the *Wish Factoring Agreement* and *Guarantee*.

71.     By divesting itself of these assets, Wish and/or Lewis-Jones caused or increased their professed insolvency.

72.     Accordingly, Laguna may annul all Wish/Lewis-Jones acts made which caused or increased Wish and/or Lewis-Jones's insolvency, under Louisiana's revocatory action. La. Civ. Code art. 2036, *et seq*.

73.     After sufficient discovery has been conducted, the transferee(s) to all discovered acts will be joined.

74.     This theory of recovery is recognized in California, under its Uniform Fraudulent Transfer Act.

**COUNT EIGHT:**
**OBLIQUE ACTION**
**LA. CIV. CODE ART. 2044**

75.    Laguna incorporates by reference the allegations it already made in ¶¶ 1-74, above.

76.    Upon information and belief, Wish and/or Lewis-Jones have not fully exercised their rights (whether review, appeal, or enforcement) regarding the receivables it sold Laguna.

77.    As Wish and Lewis-Jones's obligee under the *Wish Factoring Agreement* and *Guarantee*, it may exercise those rights itself under the Louisiana oblique action.

78.    After discovery and the opportunity to join the appropriate parties, Laguna intends to seek a final determination, on whether the healthcare receivables it purchased from Wish can properly be paid, from programs like Medicare and/or Medicaid.

79.    Laguna also intends to exercise Wish and/or Lewis-Jones's rights to correct any licensing or regulatory deficiencies relative to Medicare or Medicaid programs, so the existing healthcare receivables might be properly paid.

80.    And, also after discovery, Laguna will seek to exercise any extant rights which Lewis-Jones may have against third parties, but which she is not and which non-exercise is contributing to or causing her insolvency.

**COUNT NINE:**
**DELAY DAMAGES**
**LA. CIV. CODE ART. 2000**

81.    Laguna incorporates by reference the allegations it already made in ¶¶ 1-80, above.

82.    Because the object of Wish and Lewis-Jones's performance(s) of their contracts are the payment of a sum of money to Laguna, Laguna should be paid delay damages measured by interest on the sums payable at the contractual rate stipulated in the

*Wish Factoring Agreement*, the *Guarantee*, or at the rate of legal interest fixed by La. Rev. Stat. § 9:3500.

## COUNT TEN:
## INTENTIONAL INTERFERENCE WITH
## CONTRACTUAL RELATIONSHIP

83. Laguna incorporates by reference the allegations it already made in ¶¶ 1-82, above.

84. It is undisputed there was a contract (*Wish Factoring Agreement*) and other legally protected interests (including UCC security agreements) between Laguna and Wish.

85. Lewis-Jones, as Wish's sole member, knew about the *Wish Factoring Agreement* - she executed the contract for Wish.

86. By diverting funds which should have been destined for the agreed "lockbox" arrangement, by cutting Laguna off from its ability to monitor Wish's billing and collection practices, by committing Medicare or Medicaid violations which ultimately destroyed the value of the receivables purchased by Laguna, and by the misrepresentations or omissions described in ¶ 39, above, Lewis-Jones intentionally induced or caused Wish to breach the *Wish Factoring Agreement* or she made its performance impossible or more burdensome.

87. There was no justification for Lewis-Jones's behavior, which ultimately resulted in about $437,004.64 of receivables being mostly uncollectible, a discovery made after Laguna had advanced more than $345,309.19 to Wish – with no recourse now except to sue a company Lewis-Jones has gutted mere months after accepting substantial advances.

88. Under California law, punitive damages are available for this tort-based theory of recovery.

## COUNT ELEVEN:
## BREACH OF THE IMPLIED DUTY OF
## GOOD FAITH AND FAIR DEALING

89.     Laguna incorporates by reference the allegations it already made in ¶¶ 1-88, above.

90.     Wish and Lewis-Jones's likely motives in misrepresenting the validity of the healthcare receivables, and their delay in bringing the validity problems to Laguna's attention, rise to the level of bad faith and therefore violate the implied duties owed by parties to Louisiana contracts.

91.     Based on their bad faith breaches of contractual duty, Wish and Lewis-Jones should be cast in judgment for all damages suffered by Laguna, both those foreseeable and otherwise.

## PRAYER FOR RELIEF

92.     The parties having contractually waived or disclaimed their respective rights to have disputes tried to a jury, Laguna seeks to submit all issues before the District Judge. In the interim, Laguna prays that the *Complaint* be assigned a cause number in a section and division of this Honorable Court, and that the Court grant relief in in Laguna's favor, some of which will be sought in a forthcoming motion for TRO and preliminary injunction, and against all defendants, *in solido* where appropriate, for all relief allowable, whether contractual, legal, equitable, or customary, including costs under Fed. R. Civ. P. 54(d).

Respectfully submitted,

*/s/ Andrew T. Lilly*
**Andrew T. Lilly (La. 32559)**
4907 Magazine Street
New Orleans, Louisiana 70115
t: (504) 812-6388
f: (504) 539-4180
e: andrew@atlpllc.com

*Attorney for Laguna Commercial Capital, LLC*